United States Court of Appeals,

Eleventh Circuit.

Nos. 95-8046, 95-8047 and 95-8048.

Lamar ANDREWS, Individually and as representatives of a class of all other persons similarly situated;  Jerry Harper, Individually and as class representatives of a class of all other persons similarly situated;  Josephine Meadows, Individually and as class representatives of a class of all other persons similarly situated;  J.D. Powell, Individually and as class representatives of a class of all other persons similarly situated, Plaintiffs-Appellees,

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY, individually and as representatives of a class of all other entities similarly situated, Defendant, Cross-Claimant-Appellant,

Bellsouth Corporation, Individually and as representatives of a class of all other entities similarly situated;  Bellsouth Communications Incorporated, Individually and as representatives of a class of all other entities similarly situated;  Bellsouth Communications Systems, Incorporated, Individually and as representatives of a class of all other entities similarly situated;  Southern Bell Telephone and Telegraph Company, Individually and as representatives of a class of all other entities similarly situated;  Financial Collection Agencies, Individually and as representatives of a class of all other entities similarly situated, Defendants,

U.S. Sprint Communications Company Limited Partnership, Individually and as representatives of a class of all other entities similarly situated, MCI Telecommunications Corporation, Individually and as representatives of a class of all other entities similarly situated;  Mical Communications, Individually and as representatives of a class of all other entities similarly situated;  Sweepstakes, Individually and as representatives of a class of all other entities similarly situated;  Prize 395BE, Individually and as representatives of a class of all other entities similarly situated;  Reward Line, Individually and as representatives of a class of all other entities similarly situated;  Value House, Individually and as representatives of a class of all other entities similarly situated;  Sweeps 900, Individually and as representatives of a class of all other entities similarly situated;  Instant 398, Individually and as representatives of a class of all other entities similarly situated;  Gift Giveaway, Individually and as representatives of a class of all other entities similarly situated;  Fast Cash 398, Individually and as representatives of a class of all other entities similarly situated;  Unclaimed Funds, Individually and as representatives of a class of all other entities similarly situated;  Service 900, Individually and as representatives of a

class of all other entities similarly situated; Control A, Individually and as representatives of a class of all other entities similarly situated, Defendants,

West Interactive Corporation, Defendant, Cross-Defendant.

Lamar ANDREWS, Individually and as representatives of a class of all other persons similarly situated; Jerry Harper, Individually and as class representatives of a class of all other persons similarly situated; Josephine Meadows, Individually and as class representatives of a class of all other persons similarly situated; J.D. Powell, Individually and as class representatives of a class of all other persons similarly situated, Plaintiffs-Appellees,

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY, Individually and as representatives of a class of all other entities similarly situated, Defendant, Cross-Claimant,

Bellsouth Corporation, Individually and as representatives of a class of all other entities similarly situated; Bellsouth Communications Incorporated, Individually and as representatives of a class of all other entities similarly situated; Bellsouth Communications Systems, Incorporated, Individually and as representatives of a class of all other entities similarly situated; Southern Bell Telephone and Telegraph Company, Individually and as representatives of a class of all other entities similarly situated; Financial Collection Agencies, Individually and as representatives of a class of all other entities similarly situated, Defendants,

U.S. Sprint Communications Company Limited Partnership, Individually and as representatives of a class of all other entities similarly situated, Defendant-Appellant.

MCI Telecommunications Corporation, Individually and as representatives of a class of all other entities similarly situated; Mical Communications, Individually and as representatives of a class of all other entities similarly situated; Sweepstakes, Individually and as representatives of a class of all other entities similarly situated; Prize 395BE, Individually and as representatives of a class of all other entities similarly situated; Reward Line, Individually and as representatives of a class of all other entities similarly situated; Value House, Individually and as representatives of a class of all other entities similarly situated; Sweeps 900, Individually and as representatives of a class of all other entities similarly situated; Instant 398, Individually and as representatives of a class of all other entities similarly situated; Gift Giveaway, Individually and as representatives of a class of all other entities similarly situated; Fast Cash 398, Individually and as representatives of a class of all other entities similarly situated; Unclaimed Funds, Individually and as

representatives of a class of all other entities similarly situated; Service 900, Individually and as representatives of a class of all other entities similarly situated; Control A, Individually and as representatives of a class of all other entities similarly situated, Defendants,

West Interactive Corporation, Individually and as representatives of a class of all other entities similarly situated, Defendant, Cross-Defendant.

Lamar ANDREWS, Individually and as representatives of a class of all other persons similarly situated; Jerry Harper, Individually and as class representatives of a class of all other persons similarly situated; Josephine Meadows, Individually and as class representatives of a class of all other persons similarly situated; J.D. Powell, Individually and as class representatives of a class of all other persons similarly situated, Plaintiffs-Appellees,

v.

AMERICAN TELEPHONE & TELEGRAPH COMPANY, Individually and as representatives of a class of all other entities similarly situated, Defendant, Cross-Claimant,

Bellsouth Corporation, Individually and as representatives of a class of all other entities similarly situated; Bellsouth Communications Incorporated, Individually and as representatives of a class of all other entities similarly situated; Bellsouth Communications Systems, Incorporated, Individually and as representatives of a class of all other entities similarly situated; Southern Bell Telephone and Telegraph Company, Individually and as representatives of a class of all other entities similarly situated; Financial Collection Agencies, Individually and as representatives of a class of all other entities similarly situated, Defendants,

U.S. Sprint Communications Company Limited Partnership, Individually and as representatives of a class of all other entities similarly situated; MCI Telecommunications Corporation, Individually and as representatives of a class of all other entities similarly situated; Mical Communications, Individually and as representatives of a class of all other entities similarly situated; Sweepstakes, Individually and as representatives of a class of all other entities similarly situated; Prize 395BE, Individually and as representatives of a class of all other entities similarly situated; Reward Line, Individually and as representatives of a class of all other entities similarly situated; Value House, Individually and as representatives of a class of all other entities similarly situated; Sweeps 900, Individually and as representatives of a class of all other entities similarly situated; Instant 398, Individually and as representatives of a class of all other entities similarly situated; Gift Giveaway, Individually and as representatives of a class of all other entities similarly situated; Fast Cash 398,

Individually and as representatives of a class of all other entities similarly situated; Unclaimed Funds, Individually and as representatives of a class of all other entities similarly situated; Service 900, Individually and as representatives of a class of all other entities similarly situated; Control A, Individually and as representatives of a class of all other entities similarly situated, Defendants,

West Interactive Corporation, Individually and as representatives of a class of all other entities similarly situated, Defendant, Cross-Defendant-Appellant.

Sept. 19, 1996.

Appeals from the United States District Court for the Southern District of Georgia. (Nos. 1:91-175 and 92-134-CV), Dudley H. Bowen, Jr., Judge.

Before COX and BARKETT, Circuit Judges, and PROPST[*], Senior District Judge.

COX, Circuit Judge.

American Telephone & Telegraph Corporation (AT & T), Sprint Corporation (Sprint), and West-Interactive Corporation (West-Interactive) separately appeal the district court's certification under Fed.R.Civ.P. 23(b)(3) of classes of plaintiffs, in two related cases, alleging claims relating to hundreds of "900-number" telemarketing programs. We treat these separate appeals in the same opinion because the appellants raise similar issues and appeal the same class certification order. Because we conclude that the district court erred in determining that the proposed class actions would be manageable under Rule 23(b)(3), we reverse the court's order certifying the classes and remand for further proceedings.

I. FACTS AND PROCEDURAL HISTORY

Pay-per-call, or "900-number," telephone service was developed in the early 1980s. It was first used for telephone polling and

---

[*]Honorable Robert B. Propst, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

other interactive programs designed to disseminate a wide variety of information to customers, who were usually billed for the calls in their monthly phone bills. After its inception, the 900-number industry rapidly expanded to encompass varied news, sports, weather, and entertainment information programs, as well as promotional and giveaway contests. While the specifics of different 900-number programs vary greatly, their basic operation is the same: callers are enticed by television commercials, direct mail solicitation, or other advertising materials to call a 900 number, for which the callers are charged either a flat fee per call or a per-minute rate.

Appellants AT & T and Sprint are major long distance carriers that provided phone service to various "sponsors" of 900-number promotions and, after deregulation of the industry in 1986, offered billing and collection services to 900-number sponsors. The sponsors, some of which hired independent "service bureaus" to operate the 900-number enterprises, received a share of the fees collected by the long distance carriers from customers who called the 900-numbers. Appellant West-Interactive is a large service bureau based in Omaha, Nebraska, allegedly involved in the creation, promotion, and operation of various games of chance and "sweepstakes" entailing the public's use of 900 numbers.[1] This

---

[1]West-Interactive is a party only in the *Andrews* case. In addition to the three appellants, the *Andrews* plaintiffs sued MCI Telecommunications Corp. (a major long distance carrier), BellSouth Communications, Inc. (a regional telephone company), and several other entities that acted as service bureaus or sponsors. The *Harper* plaintiffs also named MCI and Southern Bell, the predecessor of BellSouth, as defendants. MCI and BellSouth entered into comprehensive settlements with the classes that were approved by the district court in June 1995. The other

appeal focuses on two groups of 900-number programs, involving sweepstakes promotions and credit card offers.

A. *The Andrews litigation*

Lamar Andrews filed *Andrews v. AT & T,* No. CV 191-175 (S.D. Ga. filed Sept. 12, 1991), individually and on behalf of "a class of all other persons similarly situated," alleging that AT & T, Sprint, West-Interactive, and others knowingly participated in an "enterprise operated in interstate commerce ... by which [people dialing applicable 900-numbers] ... place a bet or wager in the hope of winning a cash prize or some other award of great value." (R. 1-2 at 10 (First Am.Compl. at ¶ 30).) Andrews contends that 900-number charges incurred by callers participating in programs involving games of chance, sweepstakes, or information on unclaimed funds equate to "bets" placed in hope of winning some jackpot or prize. Andrews's complaint alleges that this gambling activity is "illegal under the laws of all of the fifty states," (*id.* at 18 (¶ 61)), and constitutes racketeering activity in violation of the federal RICO statute, 18 U.S.C. §§ 1961 to 1968 (1994), (*id.* at 19 (¶ 63)), the Communications Act of 1934, 47 U.S.C. §§ 201 to 229 (1994), (*id.* at 26 (¶ 89)), and the "federal common law" of communications law, (*id.* at 24 (¶ 82)).

Andrews's complaint further alleges that the defendants committed mail and wire fraud, in violation of 18 U.S.C. §§ 1341 & 1343 (1994), in furtherance of their RICO enterprise. It asserts that service bureaus like West Interactive committed mail fraud by

---

defendants named in *Andrews* appear to be defunct and are not involved in this appeal.

promoting illegal games of chance with postcards mailed to solicit "the placement of illegal wagers." (*Id.* at 19-20 (¶ 65).) The complaint alleges that AT & T and Sprint had "actual or constructive knowledge that they [were] in the business of collecting gambling wagers and debts for gambling businesses," (*id.* at 9 (¶ 26)), by using both mailed collection notices and telephone contacts. In addition to the allegations concerning a national gambling enterprise, Andrews alleges that the defendants have violated Georgia statutes that prohibit the operation of a gambling business within that state.

After discovery was completed with respect both to the merits and to class issues, the district court conducted a class certification hearing, beginning on May 23, 1994.[2] Andrews, along with the other named plaintiffs in *Harper,* testified at the hearing. Andrews stated that he could not identify any particular 900-number call that he had placed, and he failed to show that he actually paid 900-number charges that appeared on his phone bill, although his phone service had been disconnected for failure to pay his bills in full. (R. 39-272 at 241-44.) With regard to the promotional postcards he had received in the mail, Andrews admitted that he could not point to any fraudulent statements on them on which he had relied to place 900-number calls. (*Id.* at 261.)

The defendants challenged Andrews's standing to bring suit, as well as his ability to represent the interests of unnamed class members. They also argued that class certification was neither

---

[2]Although the *Andrews* and *Harper* actions have never been formally consolidated, the court conducted a single certification hearing for both cases.

feasible nor desirable, due to the number of possible claimants, the predominance of individual issues, and the unmanageability of the litigation.

The district court stated that it was "not at all impressed with the standing of ... Andrews as a representative" of unnamed class members. (R. 39-272 at 560.) The court recommended that the plaintiffs consider "augmentation of the class representatives" and recessed the hearing. (R. 39-272 at 560-61.) When the court resumed the certification hearing in September 1994, the plaintiffs moved to amend their complaints to add several new class representatives to both the *Andrews* and *Harper* groups of representatives.

The district court granted the motions to amend in November 1994, when it concluded that "all Rule 23 class action requirements are met in this case." (R. 27-336 at 22; R. 38-210 at 22.)[3] The

[3]Rule 23 provides, in relevant part:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> ....

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

court rejected the defendants' challenge to Andrews's standing, concluding that, at the least, Andrews had allegedly been the target of efforts to collect an illegal gambling debt. The court also concluded that, with the addition of new named plaintiffs, the interests of the class would be adequately represented, as required by Rule 23(a).

The court rejected AT & T, Sprint and West-Interactive's arguments that individual issues predominate over common questions of law or fact and that class treatment of the plaintiffs' claims is inferior to other modes of litigation in resolving their claims. Applying the language of Rule 23(b)(3), the court stated that it was "satisfied that common issues predominate, that individual issues can be adequately managed, and that class treatment is a superior method of adjudication (if not the *only* feasible method of adjudication, given the small size of each member's claims)." (R. 27-336 at 30-31; R. 38-210 at 30-31.) As to manageability of the huge number of potential claims involved in these cases, the court stated that "management problems and millions of claims are obstacles which can be overestimated by defense lawyers.... Counsel ... need have no fear for the management of this case. The Southern District of Georgia can and will assemble the resources

controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

that it requires."  (R. 27-336 at 22;  R. 38-210 at 22.)

The court certified a master class and a Georgia subclass. The master class includes:

> All persons who paid for one or more 900-number telephone calls billed and collected by AT & T or Sprint, which calls were made in connection with programs offering sweepstakes, games of chance, awards, cash or other prizes, gifts, or information on unclaimed funds.

(R. 27-336 at 31.)  The Georgia subclass was defined to include those members of the master class who paid for 900-number calls within Georgia.  (*Id.*)

B. *The Harper litigation*

In *Harper v. AT & T,* No. CV 192-134 (S.D.Ga. filed June 24, 1992), Andrews and plaintiffs Jerry Harper, Josephine Meadows, and J.D. Powell sued AT & T, Sprint, Southern Bell, and MCI on behalf of a Rule 23(b)(3) class of individuals solicited by "organizations offering credit cards, which, in part, provide for the making of calls by using a 900 number," who actually made 900-number calls and received bills for the charges.  (R. 28-1 at 3 (Compl. at ¶ 8).)[4]  The *Harper* complaint alleges that these 900-number programs violate the federal RICO statute as well as the Georgia RICO statute, Ga.Code Ann. §§ 16-14-1 to 16-14-15 (Michie 1992 & Supp.1995).  The complaint alleges that promotional postcards and other solicitation materials used by the organizations contained fraudulent misrepresentations as to the availability of credit and the need to call a 900 number for information about how to obtain a credit card.  The plaintiffs contend that the defendants have

_____

[4]The plaintiffs also propose to represent a subclass of Georgia residents who have allegedly been injured by the defendants' 900-number promotions within that state.

thus engaged in a pattern of racketeering activity by engaging in mail and wire fraud, both by approving and mailing misleading promotional and solicitation materials and by collecting the revenues produced by caller participation. (*Id.* at 21-22 (¶ 67).)

*Harper* proceeded in a similar fashion to the *Andrews* litigation. During the certification hearing, the named *Harper* plaintiffs testified that they, like Lamar Andrews, could not identify any deceptive representation on which they relied in making 900-number calls. (*See* R. 39-272 at 354 (testimony of Jerry Harper); *id.* at 328-29 (testimony of Josephine Meadows).) The defendants attacked the named plaintiffs and the proposed *Harper* class, using the same arguments asserted in opposition to the *Andrews* class. As in *Andrews,* the court rejected the defendants' arguments concerning standing, and it was not persuaded by their arguments against class certification. The court defined a master class and a Georgia subclass to include

> persons who paid for one or more 900-number telephone calls billed and collected by AT & T or Sprint, which calls were made in connection with programs offering credit cards, financial information services, catalog cards, or information on obtaining credit cards or catalog cards.

(R. 38-210 at 31-32.)

After the court concluded that the *Andrews* and *Harper* classes could proceed under Rule 23(b)(3), it *sua sponte* certified for interlocutory appeal the issue of whether class certification was proper. *See* 28 U.S.C. § 1292(b) (1994). AT & T, Sprint, and West-Interactive filed petitions for permission to appeal the class certifications, which we granted.

## II. ISSUES ON APPEAL

AT & T, Sprint, and West-Interactive assert that the district court committed multiple errors in certifying the proposed *Andrews* and *Harper* classes. Preliminarily, the appellants challenge the court's approval of the class representatives because of problems with standing, adequacy of representation, and typicality of the named plaintiffs' claims (Rule 23(a) issues). Second, the appellants argue that individual issues predominate in these cases, causing manageability problems that render class treatment an inferior method of resolving this litigation (Rule 23(b)(3) issues). Finally, even if *Andrews* and *Harper* can properly proceed as class actions, the appellants challenge the district court's conclusion that individual notice to unnamed class members is not required under the circumstances of this case (Rule 23(c)(2) issues). Because our resolution of the first two sets of issues is dispositive, we do not address the third.

### III. STANDARDS OF REVIEW

Whether the named plaintiffs have standing to assert their claims against AT & T, Sprint, and West-Interactive is a threshold legal issue subject to de novo review. *See Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987) ("Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether [they] have representative capacity, as defined by Rule 23(a)...."), *cert. denied,* 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988).

We review the district court's grant of class certification for an abuse of discretion. *Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371, 1374 (11th Cir.1984). Assuming that the district court

properly exercised its discretion within the parameters of the criteria of Rule 23, the court's determination should stand. *Id.* (quoting *Boggs v. Alto Trailer Sales, Inc.,* 511 F.2d 114 (5th Cir.1975)). Determining whether a class action is manageable, and thereby a superior method of fair and efficient adjudication, is committed to the discretion of the district court "because that court "generally has a greater familiarity and expertise' with the "practical ... and primarily ... factual' problems of administering a lawsuit "than does a court of appeals.' " *Central Wesleyan College v. W.R. Grace & Co.,* 6 F.3d 177, 185 (4th Cir.1993) (quoting *Windham v. American Brands, Inc.,* 565 F.2d 59, 65 (4th Cir.1977) (en banc), *cert. denied,* 435 U.S. 968, 98 S.Ct. 1605, 56 L.Ed.2d 58 (1978)).

## IV. DISCUSSION

A. *Standing and the Rule 23(a) issues*

AT & T, Sprint, and West-Interactive contend that the representative plaintiffs, particularly Lamar Andrews, have no standing to assert claims against them, either individually or as class representatives. They contend that Andrews and the other named plaintiffs failed to show that they actually made calls handled by each of the appellants or paid 900-number charges, so that they have suffered no injury sufficient to create a "case or controversy" under Article III.[5]

---

[5]The appellants further argue that, because of this shortcoming, these class actions were in effect stillborn, depriving the district court of any power to permit the plaintiffs to amend their complaint to add new representative plaintiffs. This argument is meritless and does not warrant further discussion. *See* 11th Cir. Rule 36-1.

The named plaintiffs contend that the district court properly concluded that they have standing, and we agree. At a minimum, the plaintiffs were allegedly induced by misleading solicitations to make 900-number calls, and they were the targets of appellants' attempts to collect what they allege to be illegal debts. Andrews's phone service was disconnected in part for his failure to pay 900-number charges, and the record suggests that the named plaintiffs paid at least some of the 900-number charges on their phone bills. This evidence supports the district court's conclusion that Andrews and the other named plaintiffs have standing to assert their claims.

The appellants also challenge the district court's conclusion that the class representatives' claims are typical and that the class representatives would adequately represent the interests of the classes, as required by Rule 23(a). The appellants contend that because the named representatives dialed different 900-number programs, and the programs actually dialed amount to only a minuscule portion of the total number of programs encompassed by these class actions, none of the named plaintiffs' claims can be considered typical of those of unnamed class members. The appellants also contend that the class representatives will be too preoccupied with the individual aspects of their own claims to prosecute adequately those of the classes in general.

The class representatives need not have participated in a wide variety of 900-number programs to have suffered harm typical of the harm suffered by the class members in general. *See In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996)

("Typicality" exists when "a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff.") (internal quotations and citation omitted); *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1557 (11th Cir.) ("The claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs."), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). The named plaintiffs can also consistently pursue and protect the classes' claims while litigating individual issues that may arise in connection with their own claims. *See American Medical Systems,* 75 F.3d at 1083 ("Adequacy of representation" means that the class representative has common interests with unnamed class members and will vigorously prosecute the interests of the class through qualified counsel.) (citations omitted); *see also General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982) (Commonality and typicality under Rule 23(a) serve to ensure that named plaintiffs' claims and class claims are "so interrelated that the interests of the class members will be fairly and adequately protected.... Those requirements ... tend to merge with the adequacy-of-representation requirement, although the latter ... also raises concerns about the competency of class counsel and conflicts of interest."). We find no error in the district court's application of Rule 23(a).

B. *The application of Rule 23(b)(3)*

AT & T, Sprint, and West-Interactive argue that the district court abused its discretion by certifying the *Andrews* and *Harper* classes under Rule 23(b)(3). The appellants contend that common

questions of law or fact do not predominate over individualized issues, and that insurmountable difficulties in managing these actions make class treatment inferior to other available methods, specifically case-by-case litigation of individual claims, for the "fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). To support these contentions, they cite the existence of millions of class members, hundreds of widely differing 900-number programs, and the necessity of trying elements of the classes' claims on an individual basis as well as under divergent state laws. They assert that these problems will inevitably cause these class actions to deteriorate into a morass of individual mini-trials that will overwhelm the resources of the district court.

The class representatives counter that the district court acted within its discretion to develop a manageable way to try millions of small claims that otherwise may never be adjudicated. They argue that, although the hundreds of 900-number programs may vary in exact content, the predominant issues—the legality of the basic methods of solicitation and operation of the programs, as well as the basic wrong suffered by class members—can be assessed on a class-wide basis in both *Andrews* and *Harper.*

Issues of class action manageability encompass the "whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 164, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974); *see also Windham,* 565 F.2d at 70 (stating that, while the district court "should not decline to certify a class because it

fears that insurmountable problems may later appear," if the court finds "that there are serious problems *now appearing,* it should not certify the class merely on the assurance ... that some solution will be found") (citation omitted). We conclude that the district court abused its discretion in certifying the classes because the court underestimated the management difficulties that would persist as these suits proceeded as class actions.

1. The *Andrews* class

It may be true that, at a general level, the predominant issue presented in *Andrews* is whether the appellants were involved in the operation of illegal gambling schemes that used 900 numbers to facilitate caller participation. But as a practical matter, the resolution of this overarching common issue breaks down into an unmanageable variety of individual legal and factual issues. *See Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 626 (3rd Cir.1996) (stating that beyond broad common issues surrounding harmfulness of asbestos exposure, class members' claims against asbestos manufacturers varied widely in character and could not be tried on a class basis). The class's mail and wire fraud allegations, for example, are not wholly subject to class-wide resolution. *See Pelletier v. Zweifel,* 921 F.2d 1465, 1499-1500 (11th Cir.) (stating that each plaintiff must demonstrate reliance on deceptive conduct in furtherance of the alleged RICO scheme) (citations omitted), *cert. denied,* 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 328-29 (5th Cir.1978) (expressing "serious reservations about the manageability of a class" when all damage questions cannot be handled by one forum).

With regard to the *Andrews* gambling claims, the biggest problems arise not so much in relation to the class plaintiffs' participation in the 900-number programs, but with the contours of the programs themselves. In assessing the gambling claims, aspects of each 900-number program will have to be individually examined to determine whether a particular program actually involves gambling or runs afoul of state gaming laws. For example, some programs were designed to involve skill or knowledge on the part of callers, while others appear to have depended only upon chance. Many 900-number programs also provided various means of free entry into contests or made more complete disclosures than others. In short, the 900-number programs implicated in *Andrews* cannot be lumped together and condemned or absolved en masse.

The appellants cite the need to interpret and apply the gaming laws of all fifty states to assess the legality of each 900-number program as foremost among the difficulties in trying the gambling claims on a class basis, and we agree. 900-number programs could conceivably be legal in one state but not in another. Scrutinizing hundreds of 900-number programs under the provisions of fifty jurisdictions complicates matters exponentially. *See Georgine,* 83 F.3d at 627; *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988); *see also American Medical Systems,* 75 F.3d at 1085 (stating that even where state laws differ only in nuance, nuance can be significant, leaving district court with the "impossible task of instructing a jury on the relevant law") (citing *Matter of Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1300 (7th

Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995)); *W.R. Grace,* 6 F.3d at 188-89 (stating that use of subclasses to allow juries to consider different state laws will still "pose management difficulties and reduce the judicial efficiency sought to be achieved through certification").

The plaintiffs contend that only the gaming laws of Nebraska, West-Interactive's home state, need to be construed in order to assess the legality of the games of chance implicated in *Andrews,* because a gambling business is illegal under RICO if it is illegal under the laws of any state in which its affairs are conducted. But this contention assumes that Nebraska law prohibits each of the 900-number programs encompassed by the suit. If this assumption fails, each program that is legal in Nebraska will have to be assessed under each class member's home state law. *See Castano v. American Tobacco Co.,* 84 F.3d 734, 741-42 (5th Cir.1996) (stating that class action proponents must do more than merely assert that variations in state law are insignificant or "academic"; court cannot take class proponents' interpretations of law "on faith") (citations omitted).

2. The *Harper* class

We are even more certain that the *Harper* class is unsustainable under Rule 23(b)(3). As in *Andrews,* the plaintiffs attempt to frame the "predominant" issues broadly to compensate for variations in the class members' claims. But individual issues abound and are magnified by the necessity of applying diverse state laws to programs that in many cases have little in common beyond their use of 900 numbers.

Unlike *Andrews*, which alleges an activity—gambling—that, if proven, would be illegal in most jurisdictions regardless of a plaintiff's motivation for calling a 900 number, *Harper* attacks programs offering credit cards or information about credit availability, perfectly legal activities unless coupled with illegal means of solicitation, in this case mail or wire fraud. The 900-number programs at issue in *Harper* differ widely in terms of the advertising and solicitation used, the extent to which disclosures were made, and the existence and promotion of free means of participation, so each program must be assessed individually to determine whether fraudulent tactics were employed by the appellants.

Even if it could be shown that the appellants were engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages. *See Pelletier,* 921 F.2d at 1498-1500 (discussing elements of mail and wire fraud; requiring individualized proof of reliance on deceptive conduct and injury); *Blue Bird Body Co.,* 573 F.2d at 327 (stating that class treatment in no way alters substantive proof required to succeed on claim for relief); *see also Castano,* 84 F.3d at 745 (stating that fraud class action cannot be certified when individual reliance will be an issue) (citing *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880 (5th Cir.1973)). As in *Andrews,* the problems with trying the individualized elements of the plaintiffs' claims, as well as handling the unique aspects

of the 900-number programs, are compounded by the necessity of referencing fifty sets of credit card and consumer protection laws. *See Castano,* 84 F.3d at 741; *Georgine,* 83 F.3d at 627; *Rhone-Poulenc Rorer,* 51 F.3d at 1300.

The district court, recognizing the challenge of litigating these cases, assured the parties that it "can and will assemble the resources that [management of these cases] requires."  (R. 27-336 at 22;  R. 38-210 at 22).  But litigating the plaintiffs' claims as class actions no matter what the cost in terms of judicial economy, efficiency, and fairness runs counter to the policies underlying Rule 23(b)(3).  *See* Fed.R.Civ.P. 23 advisory committee's note (1966 amendment) (stating that subdivision (b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense").  While we recognize that Rule 23 is to be applied flexibly, the manageability problems discussed above defeat the Rule's underlying purposes and render these claims inappropriate for class treatment.[6]  Finally, although the district court stated that class treatment may be the "*only* feasible method of adjudication, given the small size of each member's claims," (R. 27-336 at 30-31;  R. 38-210 at 30-31), we note that even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs.  *See* 18 U.S.C. § 1964(c) (1994); *see also Castano,* 84 F.3d at 749-50 (stating that individual trials in "immature tort"

---

[6]The plaintiffs suggested at oral argument that these cases would be made manageable by virtue of the fact that, if the classes are certified, the defendants would likely settle.  We do not view this as an appropriate measure of manageability.

context may actually enhance long-term judicial efficiency by allowing plaintiffs to winnow claims to include only strongest causes of action, thereby simplifying choice of law and predominance inquiries for eventual class treatment).

## V. CONCLUSION

Because the district court abused its discretion in certifying the *Andrews* and *Harper* classes based on its belief that these actions would be manageable, we reverse the certification order and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's determination that the district court properly found standing, adequacy of representation, and typicality of claims under Rule 23(a). I also agree with the conclusion that the district court abused its discretion in determining that the *Harper* class action was maintainable under Rule 23(b)(3). I disagree, however, with the determination that the district court abused its discretion in determining that the *Andrews* class action is maintainable under Rule 23(b)(3). I therefore dissent from the reversal of the district court's certification of the *Andrews* class.

Rule 23(b)(3) provides that a class action is maintainable if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.Pro. 23(b)(3). In making these findings,

the trial court considers, in pertinent part, "the desirability or undesirability of concentrating the litigation of the claims in the particular forum" and "the difficulties likely to be encountered in the management of a class action."  *Id.*

As the majority notes, determining the manageability of a class action is committed to the discretion of the district court "because that court generally has a greater familiarity and expertise with the practical and primarily factual problems of administering a lawsuit than does a court of appeals." *Central Wesleyan College v. W.R. Grace & Co.,*    6 F.3d 177, 185 (4th Cir.1993) (quotation omitted).  In my view, the district court's conclusion, following a six-day evidentiary hearing, that the *Andrews* class action was manageable because common questions of fact and law predominate over individual legal and factual issues that might arise, does not constitute an abuse of discretion.

The majority's abuse-of-discretion finding is based primarily on its conclusion that the district court "underestimated the management difficulties that would persist as these suits proceed as class actions."  Maj.Op. at 3580.  According to the majority, management would be difficult because the district court would have to resolve "an unmanageable variety of individual legal and factual issues," *id.,* that would predominate over the common questions of fact and law.[1]  According to the majority, three primary issues are

---

[1]As to the *Andrews* class, the district court found that a multitude of common issues would predominate over any issues requiring individual determination.  These common issues include the creation and operation of the 900-number gambling schemes;  the terms of the billing services agreements;  the 900-number guidelines;  the defendants' knowing participation in the operation of the schemes;  and the applicability of RICO and

present: determining whether each individual relied on deceptive conduct; determining the legality and "deceptiveness" of each of the various 900-number schemes; and interpreting and applying the gambling laws of all fifty states.[2] As explained below, I believe that these issues would not predominate so as to render the action unmanageable; and even if they did, the district court could always decertify the class or address them through the other mechanisms provided by Rules 23(c)(1) and 23(c)(4).

As to the mail- and wire-fraud-based RICO claims, issues of individual reliance do not generally preclude Rule 23(b)(3) certification, particularly in cases where a common course of deceptive conduct is alleged. In *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987), for example, the district court declined to certify a securities-fraud class action after determining that questions of individual investors' reliance on misrepresentations predominated over the common questions. Upon review, we noted that although plaintiffs were required to show that they each relied upon defendants' misrepresentation, they alleged a common course of misrepresentation. *Id.* at 724. Under these circumstances, we held that "the mere presence of the factual issue of individual reliance could not render the claims unsuitable

---

Communications Act statute.

[2]Although the majority does not identify damages as an individualized inquiry as to the *Andrews* class, I note that "[w]hile the court may have to take aim at the individual amounts charged each class member for the purposes of damage calculations, such a determination should not preclude class certification when common issues which determine liability predominate." *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 122 F.R.D. 177, 182 (E.D.Pa.1988).

for class treatment." *Id.* at 724-25; *see also In re Data Access Systems Securities Litigation,* 103 F.R.D. 130, 139 (D.N.J.1984); *Gelb v. American Telephone & Telegraph Co.,* 150 F.R.D. 76, 77-78 (S.D.N.Y.1993). In this case, the district court found that individual reliance on any misrepresentation would be obvious and easy to prove because "the 900-numbers are not listed in any public telephone directory and are not otherwise in general circulation, so it may be reasonably assumed that the caller learned of the game ... and decided to call, at least in part, from the [defendant's] promotional materials or from another person who learned of the enterprise through those promotional materials."

Similarly, the majority places too much emphasis on the number of different schemes involved, identifying this issue as the biggest one confounding class certification. As an initial matter, I emphasize again that the district judge had the benefit of a six-day hearing on the merits of certifying the class, and, given the thoroughness of that hearing, I am hesitant to substitute our judgment for his on such a fact-based inquiry. But even upon my independent review of the schemes at issue here, I find that the similarities far outweigh the differences. Generally, the schemes offer a chance to win a prize—$20,000, $15,000, a Chevrolet Blazer—in exchange for dialing, and being billed for, the 900 number. Though the prizes and the charges vary (the schemes charge varying amounts by the minute; others charge a flat fee for the call), the schemes generally involve one or more prizes distributed by chance to persons who have paid for a chance to win such a

prize.[3] The schemes also generally include a free option, in which individuals may also have an opportunity to win the prize by mailing in an entry without incurring the 900-number charges. Thus, while it is true that different media are employed, including cable television, direct mail and magazine advertisements, different typefaces and layouts and graphics are used, different prizes are offered, and different charges billed, these details are not particularly relevant in determining whether the schemes themselves are legal or illegal under state gambling laws. All that is involved in that determination is whether prizes are distributed by chance to persons who have paid for a chance to win, and what effect the free option has on the overall scheme in a particular state.

Moreover, that the district court may have to examine the anti-gambling laws of numerous states in addressing plaintiffs' gambling-based RICO claims is not a reason to find the class unmanageable at this time. To begin with, the possibility that the district court will have to apply the laws of numerous states is just that—a possibility. As the majority recognizes, if the gambling schemes are illegal under the law of Nebraska, West-Interactive's home state, then the schemes' illegality need not be examined under the laws of any other state. And even if the anti-gambling laws of other states must be examined, these individual examinations, as the district court found, would share many common questions; nor would the individual state legal issues

---

[3]A few schemes fall outside these generalities. For example, a few schemes appear to offer coupons to everyone who calls.

predominate over the many other common questions in the case. The commonality and manageability of the state-law gambling issues is confirmed by the form opinion letters used by game operators to convince AT & T that the games were "legal": The letters analyze the gambling and lottery laws of all fifty states in less than twelve pages. Thus, even if different state laws apply, the application of those laws would not necessarily render the litigation unmanageable.[4]

Even if the litigation does become unmanageable, due to individual questions of reliance, the particularities of the games, or the need to apply numerous anti-gambling laws, the district court could employ a variety of mechanisms to mitigate the unmanageability. As the court noted, the use of special masters and computer programs may be used to facilitate an efficient resolution of certain types of issues. And pursuant to Rules 23(c)(1) and 23(c)(4), a district court can modify a certification order by employing subclasses or decertifying class treatment of certain issues. Indeed, "courts have certified nationwide ... class actions, which also include myriad individual factual and legal issues, relying on the capacity for a court to decertify or redefine the class subsequently if the case should become unmanageable." *See In re General Motors Corp. Pick-Up Truck Fuel Tank,* 55 F.3d 768, 815 (3d Cir.1995).

In short, I believe the majority does not give sufficient

---

[4]This case is thus distinct from *Castano v. American Tobacco Co.,* 84 F.3d 734, 741-45 (5th Cir.1996), in which the district court failed to adequately consider how variations in state law would effect commonality and manageability.

deference to the sound judgment of the district court which, as noted earlier, "generally has a greater familiarity and expertise with the practical and primarily factual problems of administering a lawsuit than does a court of appeals," *W.R. Grace & Co.,* 6 F.3d at 185. I also believe the majority gives insufficient weight to the Rule 23, post-certification mechanisms designed for use when manageability problems arise, thus risking the foreclosure of relief to plaintiffs whose claims, for all practical purposes, can be raised only by way of a class action. Accordingly, I respectfully dissent.