**John Robert CULPEPPER & Patricia Starnes Culpepper, et al., Plaintiffs,**

v.

**INLAND MORTGAGE CORPORATION, Defendant.**

**Beatrice N. Hiers, individually and as a representative of a class of similarly situated persons, Plaintiff,**

v.

**Irwin Mortgage Corporation d/b/a Inland Mortgage Corporation, Defendant.**

**Nos. CV 96–BU–0917–S, CV 98–BU–2187–S.**

United States District Court, N.D. Alabama, Southern Division.

March 1, 1999.

David R. Donaldson, Tammy McClendon Stokes, Donaldson Guin & Slate LLC, Birmingham, AL, for plaintiffs.

Cathy S. Wright, Sarah Y. Larson, Maynard Cooper & Gale, Birmingham, AL, Robert J. Pratte, Margaret K. Savage, David S. Hay, Briggs & Morgan, Minneapolis, MN, Alan Hall Maclin, Briggs & Morgan PA, St. Paul, MN, for defendants.

## Order

BUTTRAM, District Judge.

This cause comes on to be heard on a motion for class certification filed by the plaintiffs in CV 96–BU–0917–S, John Robert Culpepper and Patricia Starnes Culpepper, and the plaintiff in CV 98–BU–2187–S, Beatrice N. Hiers, on February 25, 1999.   In

their motion, the plaintiffs request certification under Federal Rule of Civil Procedure 23(b)(3) of a class defined as follows:

> All persons who, from April 11, 1995, until this class is certified, inclusive, obtained an FHA mortgage loan that was funded by Irwin Mortgage Corporation wherein the broker was paid a loan origination fee of 1% or more and wherein Irwin paid a "yield spread premium" to a mortgage broker.

The defendant, Irwin Mortgage Company, opposes the certification of the above-defined class, stating that such class would satisfy neither the typicality and adequacy requirements of Federal Rule of Civil Procedure 23(a) nor the predominance and superiority requirements of Federal Rule of Civil Procedure 23(b)(3). The plaintiff disputes this.

The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176[ ]. Class relief is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Id.*, at 701, 99 S.Ct. 2545[ ]. For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Ibid.* *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). A district court is to make the determination of whether an action should proceed as a class action "[a]s soon as practicable after the commencement of an action brought as a class action...." FED.R.CIV.P. 23(c)(1). *See American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), *reh'g denied*, 415 U.S. 952, 94 S.Ct. 1477, 39 L.Ed.2d 568. "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996).

■ The party desirous of certification of a class bears the burden of demonstrating the existence of the prerequisite for certification set forth in Federal Rule of Civil Procedure 23(b). That the named plaintiffs must demonstrate the basis for class certification does not entail that the named plaintiffs must prove the merits of the substantive claims of the proposed class. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."). Nonetheless, the court must sometimes inspect certain core facts not presented in the pleading when the court must "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of certification issues." *Castano v. American Tobacco Co.*, 84 F.3d at 744.

### Background

On April 11, 1996, plaintiffs John Robert Culpepper and Patricia Starnes Culpepper filed their complaint in the instant action, claiming that the defendant, Irwin, paid the broker who originated their mortgage a kickback of $1,263.21 in violation of § 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607. Plaintiff Beatrice N. Hiers filed an action on August 28, 1998, also alleging that the defendant paid a kickback to her mortgage originator (broker) in violation of § 8 of RESPA, in the amount of $4,538.37. Many of the facts regarding the Culpeppers and Irwin that are relevant to the instant motion were recounted in the Eleventh Circuit Court of Appeals' opinion in *Culpepper v. Inland*, 132 F.3d 692, 694–95 (11th Cir.1998):

#### A. The Yield Spread Premium

The pertinent facts are undisputed. John and Patricia Culpepper ("the Culpeppers") obtained a federally insured home mortgage loan from Inland Mortgage Corp. ("Inland"). The Culpeppers did not deal directly with Inland, but dealt with

Premiere Mortgage Company ("Premiere"), a mortgage broker.

Inland, like other lenders, sends Premiere daily rate sheets that show the types of loans Inland will make to qualified borrowers. Each type of loan has a benchmark interest rate called the "par rate." This is the lowest interest rate at which Inland will make loans without charging the borrower "discount points." If Premiere as the mortgage broker brings Inland a loan at a "below par rate," then Inland requires Premiere, who then requires the borrower, to pay discount points for the loan. However, if Premiere brings Inland a loan with interest at an "above par rate," then Inland pays a "yield spread premium" to Premiere.

On December 7, 1995, Premiere received a rate sheet from Inland and informed the Culpeppers that a 30–year loan was available at a 7.5% interest rate. The Culpeppers accepted the rate, and Premiere registered the loan with Inland. Unbeknownst to the Culpeppers, the rate sheet showed that 7.5% was higher than Inland's par rate on 30–year loans and carried a yield spread premium of 1.675% of the loan amount, or $1,263.61. Premiere quoted the 7.5% rate notwithstanding the fact that Inland would make the same loan at 7.25%. At that lower interest rate, the yield spread premium paid to Premiere would be only 0.125% of the loan amount, or $97.20.

When the transaction closed on December 15, 1995, the Culpeppers paid Premiere an origination fee of $760.50 for Premiere's assistance in obtaining and closing their loan. Then, Inland paid Premiere the yield spread premium of $1263.21. The Culpeppers do not challenge the origination fee they paid to Premiere. Rather, their claim focuses solely on the legitimacy of Inland's yield spread premium payment under RESPA.

### B. Calculating The Yield Spread Premium

Inland's formula for determining the size of the yield spread premium was not tied to services, but to the size and interest rate of the Culpeppers' loan. Inland's rate sheet shows that the amount of the yield spread premium was solely a function of the extent to which the interest rate on the loan exceeded Inland's par rate. Indeed, the services provided by Premiere were the same irrespective of the interest rate.

### C. Table Funded Transactions

One final facet of this loan is important to the court's decision in this case. Although Premiere was the nominal creditor on the loan documents, Premiere did not fund the Culpeppers' loan. Instead, Inland advanced the funds and Premiere contemporaneously assigned the loan to Inland. This type of brokerage arrangement is known as "table funding;" thus, Inland, not Premiere, owned the Culpeppers' mortgage from the outset.

Hiers obtained her $159,750.00 FHA mortgage on August 29, 1997, after shopping around for a preferable interest rate. The first loan for which she became qualified was a 7.5% fixed-rate mortgage to be provided through Countrywide Mortgage. Believing that she could obtain a better interest rate, the plaintiff contacted Home Buyer's Mortgage, Inc., ("Home Buyer's") and obtained what she believed at the time the mortgage was offered to be a 7% fixed-rate mortgage. At the time of closing, however, it was revealed to her that the mortgage was in fact an adjustable rate mortgage.

At closing, Home Buyer's received $10,-004.45, consisting of $744.00 paid directly from Hiers, an $800.00 lender credit belonging to Hiers, $4,721,58, paid as a 3% discount fee from the sellers, and a $4,538.87 yield spread premium paid directly from Irwin. Like the Culpeppers, Hiers's claims do not involve the payment of the origination fee to Home Buyer's, but focuses on the yield spread premium paid to Home Buyer's by the defendant.

### Contentions & Analysis

The plaintiff seeks certification of a class pursuant to Federal Rule of Civil Procedure 23(b)(3), which states, in relevant part:

(a) **Prerequisites to a Class Action,** One or more members of a class may sue or be

sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of the members of the class in individually controlling the prosecution and defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular fo-

rum; (D) the difficulties likely to be encountered in the management of a class action.

FED.R.CIV.P. 23(a) & (b)(3). "In the 1966 class-action amendments, Rule 23(b)(3) ... was 'the most adventuresome' innovation[,] ... add[ing] to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997).[1] Thus, "the federal class action is no longer 'an invitation to joinder' but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *American Pipe & Const. Co. v. Utah,* 414 U.S. at 550, 94 S.Ct. 756. *See Matter of American Reserve Corp.,* 840 F.2d 487, 489 (7th Cir.1988) ("Class actions have procedural and substantive advantages. Procedurally, the class action concentrates litigation in a single forum, where it may be resolved more readily than a series of suits could be.").

██ The central contention of the defendant is that because of the fact intensive nature of the analysis into the reasonableness of the "total compensation" to the broker, typicality under Rule 23(a)(3) does not

---

1. To some degree, the Rule 23(b)(3) class is to be compared to the class it replaced in the 1966 class-action amendments, the so-called "spurious class." In *Snyder v. Harris,* 394 U.S. 332, 335, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), a case essentially about aggregation of claims, the Supreme Court briefly spelled out the differences between the types of class actions maintainable prior to 1966 and the basis for categorization of class actions after the 1966 rule:

Under old Rule 23, class actions were divided into three categories which came to be known as 'true,' 'hybrid,' and 'suprious.' True class actions were those in which the rights of the different class members were common and undivided; in such cases aggregation was permitted. Spurious class actions, on the other hand, were in essence merely a form of permissive joinder in which parties with separate and distinct claims were allowed to litigate those claims in a single suit simply because the different claims involved common questions of law or fact. In such cases aggregation was not permitted: each plaintiff had to show that his

individual claim exceeded the jurisdictional amount. The 1966 amendment to Rule 23 replaced the old categories with a functional approach to class actions. The new Rule establishes guidelines for the appropriateness of class actions, makes provision for giving notice to absent members, allows members of the class to remove themselves from the litigation and provides that the judgment will include all members of the class who have not requested exclusion.

One of the changes consequent to replacing 'spurious' class actions with Rule 23(b)(3) class actions was that rather than treating the class vehicle as a form of grand joinder—an opt-in vehicle, the class vehicle was treated as a representative suit for all members of the defined class except those who did not wish to partake in the class. This focus upon representation necessitated a *functional* similarity amongst the class members, that is, while each individual class member may have some different particulars to his or her claim, for purposes of resolving the core matters of the suit, any class member was functionally as good as another.

exist [2] and that the facts as to each individual purchase will predominate over the common issues in violation of Rule 23(b)(3).[3] The court finds this to be incorrect. The Eleventh Circuit Court of Appeals, in the original *Culpepper* opinion, stated that it was not required to investigate the reasonableness of the compensation provided to the broker because the yield spread premium paid was neither a payment for goods or services. *Culpepper v. Inland Mortgage Corporation*, 132 F.3d at 697. The facts on which the Court of Appeals reached its decision is built into the class definition provided by the plaintiffs. For example, the Court of Appeals determined that the yield spread premium paid to Premiere could not be a payment for goods if the loan to the Culpeppers was table-funded—that is, Irwin provided the funds for the mortgage and was therefore not paying Premiere for the loan. The Culpeppers and Heirs thus limit the relevant class to those persons whose loans were table-funded. Further, the Court held that the yield spread premium could not be a payment for services, either to the Culpeppers

or Irwin because (1) the defendant had no evidence that the 1% origination fee charged by Premiere was not meant to compensate it completely and (2) because the amount of the yield spread premium was not tied in any fashion to the amount of services paid either to the Culpeppers or Premiere. The definition of the class again attempts to draw these distinctions into the definition of the class. The plaintiffs limit the class to those individuals who acquired FHA loans and who paid a 1% loan origination fee for the services provided to them by the broker. Because the broker could charge no more under applicable FHA regulations, the plaintiffs contend, the 1% origination fee fully compensates the broker for its services. This may often be the case, but, the defendant might be able to demonstrate that in some instances the yield spread premium was tied to the services provided by brokers to either it or to putative class members. However, such proof will, of necessity, be of a general nature, such as memoranda dictating that the amount of yield spread premiums paid is to be increased or decreased based upon the services

**2.** In *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984), the Eleventh Circuit Court of Appeals explained, in general, what factors bear on the determination of whether the claims or defenses of the class representative are typical of those belonging to the class.

A class representative's claims or defenses must be typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3). In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. A sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class. *Edmondson v. Simon*, 86 F.R.D. 375, 380–81 (N.D.Ill.1980); *Senter v. General Motors Corp.*, 532 F.2d 511, 525 n. 31 (6th Cir.1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150[] (1976); 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23.06–2 at 191–92 (2d ed.1982); 7 C. Wright & A. Miller, Federal Practice And Procedure § 1764 (1972).

*See also Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 n. 8 (11th Cir.1992) (stating that the commonality, typicality and fair representation requirements of class certification tend to merge and that "[c]ommonality and typicality represent the 'nexus' necessary between class representatives and class members"), and *Taylor v. Flagstar Bank, FSB*, 181 F.R.D. 509, 516 (N.D.Ala.1998) (noting that the typicality requirement presents "somewhat of a low hurdle" to the purported class representative seeking certification).

**3.** "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. at 594, 117 S.Ct. at 2249. Therefore, the examination of predominance "focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. at 594, 117 S.Ct. at 2249–50). The locus of the predominance inquiry is whether those common issues of law and fact presented by the case are overwhelmed by the particular factual and legal inquires that the case might present. *See Andrews v. American Telephone & Telegraph Company*, 95 F.3d 1014 (11th Cir.1996). If resolution of the central inquiry of the class claim "breaks down into an unmanageable variety of individual legal and factual issues," class certification is inappropriate. *Id.*

provided and will not be fact specific. The class meets both the typicality and predominance requirements of Rule 23.

The defendant insists, however, that this Court will be required to analyze the reasonableness of each loan transaction. Given the definition of the class, this issue is likely never to arise. Indeed, it will only arise if the defendant is somehow capable of demonstrating, contrary to proof otherwise by the plaintiffs, that the yield spread premium is tied in some fashion to the services provided it by the broker. This, the defendant has been at this point unable to do. In so stating, the Court is not indicating that the defendant carries the burden of proof; rather, it is noting that, at this stage, the plaintiff has presented evidence that the yield spread premium is unconnected to anything but the difference between the par rate and the interest rate at which the mortgage was made. The claims of the plaintiffs and any putative class hang largely, almost exclusively, on this issue. *See Dujanovic v. MortgageAmerica,* 185 F.R.D. 660, 672–73 (N.D.Ala.1999). Therefore, there are insufficient factual particulars to overwhelm this issue.[4]

### Conclusion

For the forgoing reasons, the plaintiffs' motion for class certification is GRANTED.

---

**4.** The defendant raises the argument that plaintiff Hiers is an inadequate class representative because a portion of her loan origination fee was paid for with a lender credit. This does not detract from the fact that Hiers paid a 1% loan origination fee. Therefore, adequate representation exists between Hiers and the class.

The class also meets the superiority requirement. As Magistrate Judge Putnam stated in *Dujanovic v. MortgageAmerica,* 185 F.R.D. 660, 672–73 (N.D.Ala.1999):

> While the court is always mindful of any litigant's interest in controlling his own action, that interest is not unusually compelling in this case, which is similar to other class actions that have challenged the propriety of a financial institution's charges or practices. Class actions have been found to be particularly appropriate where a large number of borrowers

seek relief from a course of conduct that violates laws aimed at preventing misconduct by lenders, but where the amount of each borrower's damages may be too small to warrant individual lawsuits. *Cohen v. District of Columbia Nat'l Bank,* 59 F.R.D. 84 (D.D.C.1972). As is common in these types of lawsuits, the amount of damages for each individual class member often would be too small to justify a separate action.

> There has been no indication that any other litigation on this issue against this defendant has been commenced, although there have been numerous lawsuits challenging the same practice. Consequently, treatment of this action as a class action could determine whether [defendant's] practice is violative of RESPA without subjecting the defendant to duplicative lawsuits.