Donald PEOPLES and Michael D. Broaddus, Plaintiffs,

v.

AMERICAN FIDELITY LIFE INSURANCE CO., Transworld Assurance Co., Warrington Bank and Kurt G. Cuddy, Defendants.

No. 3:97CV101/MD.

United States District Court, N.D. Florida, Pensacola Division.

Jan. 6, 1998.

Peter Kent Spriggs, Spriggs & Johnson, Tallahassee, FL, W. Christian Hoyer, James Hoyer & Newcomer, Tampa, FL, Ronald R. Parry, Arnzen Parry & Wentz, Covington, KY, Stephen L. Hubbard, Cantilo Maisel & Hubbard, Dallas, TX, Andrew S. Friedman, H. Sullivan Bunch, Bonnett, Fairbourn, Friedman, & Balint, P.C., Phoenix, AZ, Nancy Grim, Nancy Grim, P.A., Kent, OH, Richard Errol Johnson, Richard E. Johnson, P.A., Tallahassee, FL, for Plaintiffs.

Larry Hill, Moore, Hill Westmoreland, Hook & Bolton, P.A., Pensacola, FL, for American Fidelity Life Ins. Co., Transworld Assurance Co. and Warrington Bank.

Mark B. Jackson, Terzich & Jackson, Ltd., Gardnerville, NV, for Kurt G. Cuddy.

### ORDER DENYING MOTION FOR CLASS CERTIFICATION

DAVIS, United States Magistrate Judge.

Before the court are plaintiffs' motion and amended motion for class certification (docs. 71, 76). The parties have consented to the undersigned magistrate judge exercising jurisdiction over this action pursuant to Title 28 U.S.C. § 636(c). Jurisdiction is in this court by reason of the diversity of citizenship of the parties, Title 28 U.S.C. §§ 1332 and 1367, as well as 18 U.S.C. § 1961 *et seq.*, the Racketeer influenced and Corrupt Organization Act (RICO). For the reasons discussed below, the motion is DENIED.

### BACKGROUND

Plaintiffs, Ohio residents, filed an eight count complaint against these defendants claiming RICO violations and state law causes of action. Defendants are two life

insurance companies domiciled in Florida and California, respectively, which are allegedly related through common ownership or control; a bank domiciled in Florida and owned or controlled by the same group; and an individual insurance agent of the companies who lives in Nevada.

Plaintiffs allege generally that agent Cuddy and the two insurance companies wrongfully conspired to create an insurance product—the Flexible Dollar Builder—and to sell it to a target market of primarily, but not exclusively, government employees. Cuddy and agents trained by him, with the knowledge and participation of the companies, created a sales pitch to be uniformly presented, and which contained fraudulent misrepresentations. Some of the misrepresentations were that the product being offered was a retirement plan, that it guaranteed an eleven percent return on money invested, that the owner of the plan could borrow against the plan for educational purposes, that the plan was produced and underwritten by government-related organizations, that the selling agents were representatives of those organizations, that the plan was endorsed by various unions of government workers, and that the plan, including the educational loan feature, was available only through the defendant companies.

In truth, say plaintiffs, defendants were selling nothing more than life insurance. The purported savings feature was simply a cash value rider on a whole life policy, and the educational loan feature was nothing more than a referral to the federal government's guaranteed student loan program, available to anyone. Moreover, there was no actual guaranteed return of eleven percent or anything near that percentage, the purported government-related organizations involved with the product were fictitious, and there were no union endorsements. Plaintiffs further say that the marketing scheme for this entire fraudulent program was based on a word-for-word sales presentation created by Cuddy and the companies, and that in fact policies were sold to thousands of innocent people in exactly the fraudulent manner Cuddy prescribed. The racketeering alleged by plaintiffs included mail fraud, wire fraud, obstruction of justice and engaging in interstate travel in aid of the racketeering enterprises. Plaintiffs joined the bank as a defendant by alleging that all purchasers of the product were required to pay premiums through government allotments payable only to the bank, thereby further benefitting the common owners.

The two individual plaintiffs allege in their complaint that they were sold life insurance policies in Ohio in exactly the manner described above. They now purport to represent all persons similarly situated and seek certification of a class.

## PROCEDURAL HISTORY

Defendants earlier moved to dismiss plaintiff's RICO count, claiming that the McCarran–Ferguson Act, Title 15 U.S.C. § 1012, divests federal courts of jurisdiction over claims of this nature by proscribing the application of federal statutes of general applicability to the regulation of insurance companies. Defendants further moved to dismiss the state claims, which would fail if this court had no jurisdiction under RICO. The motion was denied by order dated June 2, 1997. Defendants' motion to strike plaintiffs' claim for punitive damages was granted without prejudice.

Plaintiffs' amended motion for class certification was filed on May 1, 1997. Ruling on the motion was deferred pending the handling of various discovery disputes, all of which are now resolved. The parties have filed their respective memoranda and have provided the court with documentary evidence and deposition transcripts in support of their respective positions on the motion. Also pending are motions for summary judgment filed by defendants. Ruling on these motions has been deferred pending resolution of the present motion. Plaintiffs will now be required to respond to the motions for summary judgment in accordance with the local rules of this court.

## DISCUSSION

### A. CLASS ACTION REQUIREMENTS

■ "The policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Products, Inc. v. Windsor,* — U.S. —, —, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997), quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir.1997). District courts have broad discretion in determining whether to certify a class. Determining whether a class action is manageable and thereby a superior method of fair and efficient adjudication is committed to the discretion of the district court because of its greater familiarity and expertise with the practical problems of administering a lawsuit. *Andrews v. American Tel. & Tel. Co.,* 95 F.3d 1014, 1022 (11th Cir.1996). "A district court's class certification order will not be reversed unless the court abused its discretion or applied impermissible legal criteria or standards." *Crum v. Housing Auth. of Tampa, Fla.,* 841 F.2d 376, 378 (11th Cir.1988) (citations omitted).

In this case, plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23, which has two distinct sets of requirements for such certification. First, Rule 23(a) requires plaintiffs to show that

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Prior to 1966, Rule 23 required a showing for certification of only those prerequisites (although worded differently and somewhat more loosely) listed above. However, the 1966 amendments added the language of Rule 23(b), which provides that plaintiffs must additionally show one of three things: (1) that a class action is necessary to, for example, prevent inconsistent adjudications on matters of common interests or unexpected results being visited on persons not parties, (2) that the party opposing the class has acted or refused to act on grounds generally applicable to the class, or (3) in an action in which class certification is not as clearly called for, but is "nevertheless convenient and desirable," (Adv.Comm.Notes) if:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Plaintiffs here claim that they satisfy the requirements of Rule 23(a) and Rule 23(b)(3), and that therefore their class should be certified by the court.

Defendants do not contest that the potential plaintiffs are numerous. However, they deny that there are common questions of law or fact (commonality), that the claims of the representative parties are typical (typicality), that common issues of law or fact predominate (predominance), or that a class action is superior to other available methods of resolving the controversy (superiority). As will be shown, these issues necessarily intertwine, but plaintiffs bear the burden of proof. *Horton v. Goose Creek Ind. Sch. Dist.,* 690 F.2d 470, 476 (5th Cir.1982); *Castano v. American Tobacco Co.,* 84 F.3d 734, 741 (5th Cir.1996). For purposes of this order, the remaining listed requirements of Rule 23 will be assumed.

### B. THE RECORD TO BE CONSIDERED

Defendants maintain that the court must determine the certifiability of a class based on what is in the record when the motion to certify is filed. Plaintiffs maintain that the court must look beyond the allegations of the complaint for a fair and complete determina-

tion of the issue. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987); *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir.1984). Plaintiffs say they would be prejudiced if they were required to rely only on what might be placed in the record at the filing of the motion, because the local rules of this court require that motions for certification be filed within 90 days of filing the complaint, N.D.Fla.Loc.R. 23.1(B), too early to conduct meaningful discovery. Without addressing the latter argument, the court, by permitting discovery as to class-related matters since the motion was filed, has at least tacitly agreed with plaintiffs that materials beyond early filings should be considered.

It is necessary for the court to look beyond the bare pleadings here. "Sometimes the issues are plain enough from the pleadings . . . and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification issue." *General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Also, the court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *Id.*, 457 U.S. at 161, 102 S.Ct. at 2372. This necessarily requires looking beyond the pleadings where the issues are not so plain. And since the question of whether to grant or deny certification is committed to the broad discretion of the court, *Washington v. Brown and Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992), the court should be particularly careful to examine as much material as is necessary to make a reasoned decision.

Here, the parties have submitted, in addition to the basic pleadings, copies of the policies in question, marketing materials and brochures, consumer complaints to various state insurance agencies and the United States Army,[1] investigation reports from these same agencies, the transcript of the videotaped training film prepared and narrated by Cuddy, and deposition transcripts the two individual plaintiffs, defendant Cuddy, and the customer complaint representa-

tive of AMFI, to name the more important submittals. Although there may be significantly more information to be disclosed on discovery, the above is sufficient for a "rigorous analysis" of the issues presented, particularly where, as here, the plaintiffs' own proofs ultimately defeat their claim.

## C. THE PROPOSED CLASS

It is essential that the court demand of the moving party to present it with a description of a clearly identifiable group of specific individuals whose interests are being placed before it. *Shores v. Sklar*, 844 F.2d 1485 (11th Cir.1988). Here, plaintiffs identify their class as "all persons who purchased one or more life insurance policies from Defendants AMFI and TWA pursuant to Defendants' fraudulent and deceptive sales and marketing scheme of misrepresenting such policies as retirement plans, saving plans, or other non-insurance plans." Defendants do not take issue with this definition. However, given the interplay between commonality, typicality, predominance and superiority discussed below, the court does not necessarily find that this definition is sufficiently precise to make its members readily ascertainable without a prolonged and individualized analytical struggle. For the purpose of this order only, therefore, this entire issue will be assumed proven.

## D. ANALYSIS

### 1. Commonality and Typicality

 Rule 23(a) requires a finding that "there are questions of law or fact common to the class." For the moment, it is enough to say that there are such common questions. Certainly factual determinations as to the development of the product in question and the role the various parties played in it will involve common facts, as will questions of law relative to the application of RICO to the facts. Whether the common questions of either law or fact predominate will be discussed later. It is simply noted that commonality by itself is not enough.

---

1. The product was apparently sold on at least one military installation, allegedly in violation of service regulations.

■ Rule 23(a) also has as a prerequisite a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Again, there is undoubtedly typicality present to some degree. These proposed class plaintiffs both claim that they were sold insurance policies which were represented to be something else, and they both claim to have relied on essentially the same offer made in the same manner. As before, however, typicality by itself is not enough, and as discussed below, the plaintiffs' claims are less similar than they appear from the face of the pleadings.

### 2. Predominance and Manageability—Common Issues of Law

■ Rule 23(b)(3) provides that if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting any individual members" a class action may be maintained. Rule 23(b)(3) includes a non-exhaustive list of factors for the court to consider relative to predominance and superiority: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." To make the findings required to certify a class action under Rule 23(b)(3), the court must identify the substantive law issues which will control the outcome of the litigation. *Alabama v. Blue Bird Body Co.,* 573 F.2d 309, 316 (5th Cir.1978).[2] "A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions." *Castano v. American Tobacco Co.,* 84 F.3d 734, 741 (5th Cir.1996); *Andrews v. American Tel. & Tel. Co.,* 95

F.3d 1014, 1024 (11th Cir.1996); *Mack v. General Motors Acceptance Corporation,* 169 F.R.D. 671, 676 (M.D.Ala.1996).

■ Plaintiffs' reliance on Rule 23(b)(3) may have been encouraged by the Advisory Committee Note to that subsection which states in part that "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action." In this case, however, the necessity of applying the substantive law of multiple jurisdictions would render class certification counterproductive. There is no federal insurance code; each State has its own insurance code, as well as its own Department of Insurance which in turn has its own administrative regulations. Each foreign country in which these policies were allegedly sold has its own laws, and each military base where sales took place presumably has regulations as well. The trial of a class case would require the determination, as to each sale and under the law of each jurisdiction where the product was sold, of whether the actions complained of were indeed unlawful—whether the representations made by the sales agents were misrepresentations—a question of tremendous complexity and difficulty. *See, e.g., Andrews,* 95 F.3d at 1024; *Georgine v. Amchem Products, Inc.,* 83 F.3d 610, 627 (3d Cir.1996) *aff'd sub nom Amchem Products Inc. v. Windsor,* —— U.S. ——, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir.1987); *In re American Medical Systems,* 75 F.3d 1069, 1085 (6th Cir.1996); *Matter of Rhone–Poulenc Rorer Inc.,* 51 F.3d 1293, 1300 (7th Cir.1995); *Central Wesleyan College v. W.R. Grace,* 6 F.3d 177, 188–89 (4th Cir.1993).

Plaintiffs state in their motion for certification that common issues of law and fact will predominate in this case. However, they then discuss the facts but ignore the law altogether, offering nothing to assist the court in finding that there is commonality in the laws of the various jurisdictions involved in this case. This calls to mind the response

---

**2.** Decisions of the United States Court of Appeals for the Fifth Circuit as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, are binding precedent in the Eleventh Circuit. *Bonner v. Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981).

by another court to a similar position taken by plaintiffs in *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016–17, (D.C.Cir.1986):

> Appellees see the "which law" matter as academic. They say no variations in state warranty laws relevant to this case exist. A court cannot accept such an assertion "on faith." Appellees, as class action proponents, must show that it is accurate. We have made no inquiry of our own on this score and, for the current purpose, simply note the general unstartling statement made in a leading treatise: "The Uniform Commercial Code is not uniform."

"Issues of class manageability encompass the 'whole range of practical problems that may render the class action inappropriate for a particular suit.'" *Andrews*, 95 F.3d at 1023 (reversing certification of a class where court would be required to try the elements of classes' claims on an individual basis as well as under divergent state laws) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164, 94 S.Ct. 2140, 2146, 40 L.Ed.2d 732 (1974)). The court's reasoning in *Andrews* when confronted with a strikingly similar situation is compelling. The court stated that "while the district court 'should not decline to certify a class because it fears that insurmountable problems may later appear,' if the court finds 'that there are serious problems *now appearing,* it should not certify the class merely on the assurance ... that some solution will be found.'" *Andrews*, 95 F.3d at 1023, (quoting *Windham v. American Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977) (en banc) (emphasis in original)). Manifestly, there are few common issues of law present in this case because of the multiplicity of jurisdictions involved, and such common issues of law which exist do not predominate. On this basis alone the motion for class certification should be denied.

### 3. Predominance and Manageability— Common Issues of Fact

Contrary to the requirements of Rule 23(b)(3), noted above, the record before the court clearly shows that the questions of fact common to the members of the class do not predominate over questions affecting only individual class members. Again, it is this last consideration of manageability which ultimately mandates a finding against certifying the class in this case.

At the heart of plaintiffs' case is the assertion that the fraudulent marketing and sales scheme was monolithic and universal. That being the case, they say, this case is like a securities fraud case. Such cases are commonly found to be appropriate for class certification. In support of their argument plaintiffs cite *In re Baldwin–United Corp. Litig.*, 122 F.R.D. 424 (S.D.N.Y.1986), *In re Energy Sys. Equip. Leasing Sec. Litig.*, 642 F.Supp. 718 (E.D.N.Y.1986), *Longden v. Sunderman*, 123 F.R.D. 547 (N.D.Tex.1988), *Eisenberg v. Gagnon*, 766 F.2d 770 (3rd Cir. 1985), and *Kahan v. Rosenstiel*, 424 F.2d 161 (3rd Cir.1969). To the extent that these cases are relevant, it must be noted that they each, unlike this case, involved fraudulent sales of registered securities or other investment vehicles based on a written prospectus, private placement memorandum, or offering memorandum, presented to each purchaser. In each case, the written offering was identical or substantially identical as to each purchaser. The exception among these cases, *Baldwin–United,* involved oral misrepresentations, but also involved federal securities violations, which, as was discussed above, provided sufficient commonality on questions of law to make a class certifiable.

Plaintiffs concede that there was no written prospectus here, but argue that the canned presentation developed by Cuddy and the companies was designed to be delivered word-for-word, and that even Cuddy admonished his salespeople not to change a word. With this in mind, an analysis of Cuddy's presentation, and a comparison of that presentation to what was presented to these individual plaintiffs, as well as to what was presented to thousands of uninformed customers, is in order.

Cuddy's presentation appears in a transcript of a videotape, which is attached to the complaint and which was authenticated by Cuddy in his deposition. It purports to be a training film addressed to salespeople selling the Flexible Dollar Builder plan. In it, Cuddy indeed encourages his listeners not to

change a word of the presentation, but he says it in these words:

> The first thing that we'll be doing is we're going to be reviewing a presentation that we've used for about the last ten years.[3] And we found that with very, very few changes, this is the same presentation that we started with ten years ago. Now, obviously, that should tell you something. The presentation works. What we ask you is for the first 30 days, please don't change a word of this presentation. At the end of 30 days, feel free to make whatever changes you feel are necessary. What you'll probably find is at the end of 30 days, you won't change a thing.

Doc. 2, ex. 2, p. 2. Thus, while Cuddy clearly wants his salespeople to do a word-for-word presentation, the video transcript shows that such was not a requirement, even for the first 30 days, and that after 30 days there was no more than a prediction by Cuddy that no changes would be made. This is not a printed prospectus.

The importance of this observation relates back to the questions of commonality and manageability. In securities class action litigation it is generally accepted that there is great class-wide commonality in the content of the sales presentation because the written prospectus *is* essentially the presentation. Cf. *Maywalt v. Parker & Parsley Petroleum Company,* 67 F.3d 1072, 1074 (2d Cir.1995); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1443 n. 7 (5th Cir.1993); *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir.1983). Here, however, there is no prospectus, and while there is certainly a canned training presentation, there is no proof that the canned presentation was used consistently nationwide, much less as between these plaintiffs. Plaintiff Peoples testified that he had neither seen the Cuddy video nor read a transcript. A careful comparison of the Cud-

dy presentation to what plaintiff Peoples says was presented to him by the agent who sold it to him (Mims, apparently an employee of Cuddy) discloses major discrepancies. Peoples said he was told that the educational loan component of the plan was available only to government employees and only through the AMFI plan, yet neither of these claims appears in the Cuddy presentation. To be sure, Cuddy urges his trainees to emphasize the attractiveness of the loan feature, but he in no way says that it is exclusive. Yet Peoples testified that the exclusivity of the plan was what caused him to buy it. Also, Peoples said that the agent did not tell him he was buying insurance,[4] but the Cuddy presentation makes no such omission. The presentation discusses the insurance part of the product at some length. Ultimately, it will take a fact intensive analysis of Peoples' testimony just to determine what he was told by the agent.

Similarly, plaintiff Broaddus, who purchased the product from the same Mr. Mims as Peoples, testified that Mims told him he was selling a "policy" underwritten by AMFI, although he later testified that Mims first described the policy as a retirement supplement. He was told that for the first year the money he paid would go to insurance premiums, and that after the first year there would be cash surrender value in the policy. Broaddus indicated that he didn't place much faith in what he was told by Mims, but relied more on the written materials provided to him.[5] He testified that both Mims and Cuddy told him that he would "get" eleven percent return on his money, but that he was also told that he was "guaranteed" four percent. He said he knew he was buying insurance and was "led to believe" that he would receive eleven percent on his money. He understood that all of the money he paid after the first year would go

---

3. The actual date the video was made is unknown.

4. Peoples was not consistent in this; at some points he said he knew that he was buying insurance, but that it was not the main part of the plan, "not even half."

5. The written materials consist largely of an application, a Statement of Understanding showing

how the premiums were to be applied, allegedly fraudulent union endorsements, an outline of various federal retirement plans (which are not alleged to be misleading), a brochure describing the educational assistance plan (which specifically identifies it as the federal government's guaranteed student loan program), an allegedly fraudulent treasury note dated 1982, bearing interest at 14 7/8%, and a payroll allotment form.

into the retirement plan, not insurance. Broaddus later reviewed the transcript of the Cuddy presentation, and said the presentation he was given by Mims was the same, but that he didn't credit what was said over what was written, and what was written conflicted in part with what he thought he was being told.

This testimony is internally inconsistent, and is largely different from what is alleged in the complaint. There is also conflict concerning Broaddus' reliance on the documents rather than the oral representations, because the documents do not uniformly support his testimony or his pleadings.[6] At minimum they show the existence of insurance, for which premiums would be paid beyond the first year, and that only a four percent return was guaranteed.

■■ The court is not weighing the testimony of these two plaintiffs. Determination of a class certification motion neither permits nor requires a resolution of the merits. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rather, this court is using the differences between the Cuddy presentation, the presentation by Mims, the documents, the amount of reliance placed on any of these by the plaintiffs and the fact that there are differences between all of these and what plaintiffs allege in their complaint to show the lack of commonality. These many factual differences, as to only these two plaintiffs, are determinative here. If common issues of fact predominate, there is some reasonable expectation that the ultimate trial of the case will be manageable. The contrary is also true. If each purchase of a policy has to be examined as to the content of the presentation, the questions asked by the purchaser, the parts of the offer which were attractive to the purchaser, and the reliance by the purchaser on both the oral and written presentations, there will have to be a mini-trial involving each of those issues for each of the thousands of purchasers plaintiffs purport to represent. It is abundantly clear from the foregoing

analysis that this case contains a factual minefield.

Finally, actions alleging consumer fraud based on oral misrepresentations are generally held to be unsuited for class treatment because, for the reasons discussed, common questions would not be found to predominate. Wright, Miller and Kane, *Federal Practice and Procedure: Civil 2d* § 1782. See also *McMerty v. Burtness,* 72 F.R.D. 450 (D.C.Minn.1976) (securities claims premised on oral misrepresentations are inappropriate for class treatment, when there would be issues as to individual class members as to what misrepresentations were made, whether they were fraudulent and material, and whether they were relied on).

Plaintiffs point to no recent precedent, nor could the court find any, dealing with facts sufficiently similar to these to provide additional guidance. Therefore, the court turns again to instructive language in the Advisory Committee Notes to Rule 23 which states in relevant part:

> The court is required to find, as a condition of holding that a class action may be maintained under this subdivision, that the questions common to the class predominate over the questions affecting individual members. It is only where this predominance exists that economies can be achieved by means of the class-action device. In this view, a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action *if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.* See *Oppenheimer v. F.J. Young & Co., Inc.,* 144 F.2d 387 (2d Cir.

---

**6.** There were documents signed by these plaintiffs which appear to show that they were buying insurance policies. While this court need not determine here the effect of these documents, it

must be said that the documents raise additional fact questions as to any plaintiff who signed them.

1944); *Miller v. National City Bank of N.Y.*, 166 F.2d 723 (2d Cir.1948); . . . . (Emphasis added). In circumstances where individual issues predominate over common ones, courts routinely deny class certification. *See Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.*, 162 F.R.D. 471 (E.D.Pa. 1995); *In re Electric Weld Steel Tubing Antitrust Litigation*, 1980–81 Trade Cas. (CCH) ¶ 63,783, 1980 WL 1992 (E.D.Pa.1980); *Moore v. Southeast Toyota Distributors, Inc.*, 1982–2 Trade Cas. (CCH) ¶ 64,743, 1982 WL 1841 (N.D.Ala.1982); *Dry Cleaning & Laundry Institute of Detroit, Inc. v. Flom's Corp.*, 841 F.Supp. 212 (E.D.Mich.1993); *Mekani v. Miller Brewing Co.*, 93 F.R.D. 506 (E.D.Mich.1982); *Kenett Corp. v. Massachusetts Furniture and Piano Movers Ass'n, Inc.*, 101 F.R.D. 313, 316 (D.Mass.1984); *Butt v. Allegheny Pepsi–Cola Bottling Co.*, 116 F.R.D. 486, 493 (E.D.Va.1987). Therefore, the court concludes that common issues of fact do not predominate in this case; the facts related to individual purchasers are too diverse and complex to make this case manageable as a class action.

## CONCLUSION

Even accepting for purposes of this order that plaintiff has met the threshold requirements of Rule 23(a), this case is inappropriate for class certification because of its factual and legal complexity. Factually, there is disparity between what the pleadings say was presented to the potential class plaintiffs and what the individual plaintiffs claim they heard; there is disparity between what the Cuddy video purportedly required the agents to say and what the plaintiffs say they heard; and there is disparity between what the pleadings allege the Cuddy video said and what it in fact said. Legally, there are at minimum dozens of jurisdictions whose laws and regulations will need to be examined and applied to the particular facts presented here. The content of these laws and regulations and how similar they are is unknown, and plaintiffs have not enlightened the court in that regard, but the court has a common-sense assurance that they will in many ways be dissimilar. A class action will require resolution of these and similar issues for each of thousands of potential plaintiffs.

To the extent that there are common issues of law and fact present in this case, they do not predominate, and this case, if treated as a class action would not be manageable. It is neither "convenient [nor] desirable" to accord class status to this case given its factual and legal complexities.

Accordingly, it is ORDERED as follows:

1. The motion and amended motion for class certification (docs.71, 76) are DENIED.

2. Plaintiffs shall respond to the motions for summary judgment filed by the various defendants within 20 days. If plaintiffs feel they need additional discovery to defeat the motions, they shall within ten days identify with specificity exactly what additional evidence they need for the record and how they propose to produce it. Plaintiffs are reminded that because there are now only two plaintiffs in this case, wide-ranging discovery should not be necessary. Even if plaintiffs feel they need additional discovery, they should within the allotted time make every good faith effort to address the arguments made in defendants' various motions for summary judgment, showing how the expected discovery will refute defendant's positions.