Rothwell v. Chubb                    CV-96-83-B      03/31/98  P

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Donald E. Rothwell, et al.**

  v.                                    Civil No. 96-83-B

**Chubb Life Insurance
Company of America**


MEMORANDUM AND ORDER


Donald Rothwell, Joseph Buddemeyer, Florence Landau, and Stanley Landau have moved to certify a plaintiffs' class in their action against the Chubb Life Insuance Company of America ("Chubb").  Chubb objects, arguing that plaintiffs cannot meet the requirements of Federal Rule of Civil Procedure 23.  For the reasons discussed below, I deny the motion to certify.


I.

The named plaintiffs filed this action on behalf of themselves and a putative class comprised of as many as 350,000

1

members,[1] charging that Chubb implemented a scheme to induce prospective policyholders to purchase interest-sensitive whole life and universal life insurance policies through the use of fraudulent and deceptive sales practices.

The policies at issue require the policyholder to pay a set premium in exchange for Chubb's promise to pay a guaranteed death benefit.[2] For example, plaintiff Rothwell's policy guarantees him a $50,000 death benefit for the first five years and a death benefit of at least $21,869 for each year thereafter in exchange for an annual premium of $832. Premium payments, after the cost of insurance and various other charges are deducted, are credited to a "Fund Account," the balance of which grows over time. The Fund Account earns interest at a rate guaranteed for the first year. Although Chubb thereafter may adjust the interest rate up or down, the rate may not fall below a guaranteed minimum level.

The Fund Account serves several functions. A policyholder may borrow against the Account or reclaim the balance in the

---

[1] Rothwell, Buddemeyer, and the Landaus initially brought their actions separately. The three actions were consolidated on August 6, 1996.

[2] Chubb evolved through a series of mergers and acquisitions during the class period. Consequently, many of the policies at issue here were sold by predecessor companies.

2

Account, less a surrender charge, by canceling the policy. As the Account balance grows over time, the additional amount required to satisfy the specified death benefit correspondingly diminishes, reducing the policyholder's cost of insurance. Depending upon the value of the Account and the designated interest rate, the Account may generate sufficient interest to reduce or even eliminate the need for additional out-of-pocket premium payments. Alternatively, after the initial period in which the maximum death benefit is guaranteed, Chubb may reduce the death benefit if the interest generated is not sufficient in conjunction with the premium payments to fully cover the cost of insurance.[3]

Plaintiffs' principal argument is that Chubb adopted a practice of encouraging its agents to make misleading statements to prospective policyholders concerning the point at which the interest generated on the policy's Fund Account would be sufficient to eliminate the need for future out-of-pocket premium

---

[3] In the event that the interest earned on the Fund Account balance is insufficient to cover the cost of insurance, the policyholder also has the option of either retaining the initial death benefit by paying a higher premium or, if the value of the Fund Account is above a specified level, paying the initial premium amount, retaining the initial death benefit, and making up the difference from principal.

payments. According to the complaint, Chubb sold its policies through the use of computer-generated illustrations demonstrating this "vanishing premium" feature. These illustrations, tailored to the individual financial situation of each prospective policyholder, predict the performance of the policy based on an assumed interest rate. The rate assumed in the illustrations typically was the initial rate guaranteed for the first year, but in no event was it greater than the rate at which Chubb had credited policies in the previous year. The illustrations showed that if the interest rate at which Chubb credited the Fund Account remained at the assumed level, the policyholder's out-of-pocket premium payments would cease after a given term of years and the policyholder's death benefit would remain for the life of the policy at the level guaranteed for the first five years.

Plaintiffs contend that such illustrations were uniformly misleading in that they failed to adequately disclose, inter alia, (1) that the assumed interest rates were unrealistically high; (2) that incremental changes in the assumed interest rates could extend the "vanish year"; (3) that a significant change in the assumed rate could mean that the "vanish year" would never be

4

reached; and (4) that changes in other undisclosed assumptions could require the policyholder to continue making premium payments for many years after the "vanish year" depicted in the

illustrations.  Additionally, plaintiffs claim that Chubb's agents failed to make the disclosures necessary to render the illustrations not misleading.

Plaintiffs also allege that Chubb orchestrated a "churning" scheme by which it induced thousands of persons who already owned life insurance to use the accumulated cash values in their existing policies to purchase new policies with Chubb.  Chubb agents allegedly represented to policyholders that by using the accumulated cash values in their existing policies, they could obtain new policies offering greater coverage with no additional premium outlays.  In many cases, however, pre-existing policies had insufficient cash value to cover the premiums for the new policies.  Instead, many policyholders had to make additional premium payments, often in increased amounts, in order to maintain coverage.  Additionally, policy replacement often entailed significant undisclosed administrative fees and sales commissions.

Plaintiffs Rothwell and Buddemeyer both allege that they purchased life insurance as a result of Chubb's "vanishing premium" marketing scheme.  The Landaus claim that, as a result of Chubb's "churning" scheme, they were induced to cash in

6

existing policies in order purchase a new policy with Chubb. Plaintiffs thus brought suit seeking compensatory and punitive damages, reformation of their insurance contracts, and declaratory and injunctive relief. They base these requests for relief on claims for breach of contract, fraud, fraudulent inducement, negligent misrepresentation, negligence, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, unjust enrichment, and violations of New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2 (1995).[4]

Plaintiffs now seek to certify a class with two subclasses: (1) the "vanishing premium subclass," comprised of all persons who purchased an interest-sensitive whole life or universal life insurance policy from Chubb, from January 1, 1980, through April 15, 1996, that was sold pursuant to the vanishing premium marketing scheme; and (2) the "churning subclass," comprised of all persons who purchased an interest-sensitive whole life or universal life insurance policy from Chubb, from January 1, 1980, through April 15, 1996, as a replacement for an in-force policy

---

[4] Plaintiffs also asserted claims based on the Securities Act of 1933, 15 U.S.C.A. § 77 et seq. (1997). I disposed of these claims when ruling on Chubb's motion for partial summary judgment.

7

in a transaction in which the new policy was to be funded in whole or part by values obtained from the in-force policy.

## II.

A.  <u>**CLASS CERTIFICATION STANDARDS**</u>

To certify a proposed class, plaintiffs first must satisfy the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy.  Fed. R. Civ. P. 23(a)(1)-(4).  If those requirements are satisfied, the class then must also meet the characteristics of at least one of the three categories provided in Rule 23(b), which allows class actions where: (1) separate actions by or against individual class members would risk imposing inconsistent obligations on the party opposing the class; (2) "the party opposing the class has acted or refused to act on grounds generally applicable to the class" and injunctive relief is appropriate; or (3) common questions of law or fact predominate and a class action would be the superior method of proceeding.  Fed. R. Civ. P. 23(b)(1)-(3).  Plaintiffs bear the burden of establishing all of the requirements for class certification.  <u>Makuc v. American Honda Motor Co.</u>, 835 F.2d 389, 394 (1st Cir. 1987).

8

Although the Supreme Court has stated that a court should not decide the merits of a case at the certification stage, <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 177-78 (1974), a motion to certify "generally involves considerations enmeshed in the factual and legal issues comprising plaintiff's cause of action." <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 469 (1978) (quoting <u>Mercantile Nat'l Bank v. Langdeau</u>, 371 U.S. 555, 558 (1963)). This is particularly true with respect to questions of predominance and superiority which necessitate a "close look" at, inter alia, "the difficulties likely to be encountered in the management of a class action." <u>Amchem Products, Inc. v. Windsor</u>, 117 S. Ct. 2231, 2246 (1997) (internal citations omitted); <u>Manual for Complex Litigation</u> § 30.11 (3d ed. 1995). Consequently, I examine both the nature of the plaintiffs' claims and the manner in which they intend to prove those claims in determining whether to grant their request for class certification.

**B.    ANALYSIS**

Plaintiffs argue that their complaint satisfies the Rule 23(a) prerequisites and is eligible for class action treatment under either Rule 23(b)(2) or Rule 23(b)(3). As I conclude that the complaint cannot satisfy either of Rule 23(b)'s requirements,

10

I need not examine plaintiffs' arguments under Rule 23(a).

1. **RULE 23(b)(2)**

Rule 23(b)(2) allows certification of a class action where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs argue that Chubb consistently misled, through misrepresentation or omission, each member of the putative class as to the nature of the insurance products that Chubb induced them to purchase.  Additionally, plaintiffs argue that they are entitled to injunctive and declaratory relief.

Rule 23(b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."  Rules Advisory Comm. Note to Amended Rule 23, 39 F.R.D. 98, 102 (1966); see also Boughton v. Cotter Corp., 65 F.3d 823, 827 (10th Cir. 1995); Nelson v. King County, 895 F.2d 1248, 1254 (9th Cir. 1990); In re School Asbestos Litig., 789 F.2d 996, 1008 (3d Cir.), cert. denied, 479 U.S. 852 (1986).  This is true even if the court finds injunctive relief appropriate at some point in the litigation.  Cf. In re School Asbestos Litig., 789

11

F.2d at 1008.  Rather, plaintiffs may avail themselves of the

rule only if injunctive or declaratory relief is the predominant remedy they seek.  1 Herbert Newberg & Alba Conte, <u>Newburg on Class Actions</u> § 4.12, at 4-43 (3d ed. 1992) ("Newberg"); <u>Boughton</u>, 65 F.3d at 827 (10th Cir. 1995); <u>Heartland Communications, Inc. v. Sprint Corp.</u>, 161 F.R.D. 111, 117 (D. Kan. 1995).

Plaintiffs attempt to characterize this action as primarily seeking injunctive relief.  It is readily apparent, however, that their primary objective is money damages.  Plaintiffs assert an array of state law claims seeking compensatory and punitive damages, as well as costs and fees.  Although plaintiffs also seek equitable relief in the form of an injunction barring Chubb from canceling class members' policies for failure to pay premiums and through the imposition of a constructive trust, any such relief is secondary to their claims for money damages.  <u>See</u> <u>Freedman v. Arista Records, Inc.</u>, 137 F.R.D. 225, 229 (E.D. Pa. 1991) (declining to certify under Rule 23(b)(2) where injunctive relief secondary to monetary relief).  Consequently, certification under Rule 23(b)(2) is not appropriate.

## 2.   **RULE 23(b)(3)**

Two hurdles must be overcome to certify a class under Rule

23(b)(3): (1) common questions of law or fact must predominate over questions affecting only individual members; and (2) a class action must be "superior to other available methods" of adjudicating the case. Fed. R. Civ. P. 23(b)(3). These requirements ensure that certification is granted only where the adjudication of common issues in a single action will achieve judicial economies and practical advantages without jeopardizing procedural fairness. Amchem, 117 S. Ct. at 2249; In re American Med. Sys., Inc., 75 F.3d 1069, 1084 (6th Cir. 1996); 1 Newberg § 4.24; 7A Wright, Miller, and Kane, Federal Practice and Procedure § 1777 (1986).

Courts have not developed a precise test to determine whether common issues predominate in a proposed class action but often look for "an essential common link among class members" that can be remedied through litigation. 1 Newberg § 4.25, at 4-86. Thus, common issues are deemed to predominate when the class shares issues of "overriding significance," such as a determination of defendant's liability, so that separate adjudication of individual liability claims would be unnecessary. See 7A Federal Practice and Procedure § 1778.

Plaintiffs claim that they were all defrauded by the same

14

common course of conduct. Although they purchased their policies separately, they claim that Chubb induced them to do so through a sales campaign that was standardized, coordinated, and deceptive. According to plaintiffs, the trial will focus on Chubb's management and whether it implemented the alleged deceptive sales practices through common devices such as uniform policy illustrations, standardized sales pitches, uniform training programs, and company-wide compensation policies that encouraged agents to carry out the fraudulent practices. Such common issues, plaintiffs argue, will predominate over any issues peculiar to individual plaintiffs. I examine plaintiffs' showing with respect to each subclass in turn.

(a) Vanishing Premium Subclass

Before any member of the class can recover on any of the complaint's vanishing premium allegations, that class member will have to prove that the agent or broker who sold the policy misrepresented the way in which the policy's fluctuating interest rate could potentially affect its vanishing premium feature. Plaintiffs do not base their claim on any standard form policy language. Nor do they point to any allegedly deceptive advertising that was aimed at a mass market. Instead, their claims

15

depend on statements that allegedly were made and documents that allegedly were shown to individual class members by Chubb's general agents at the point of sale.

Plaintiffs assert that they will prove that the sales practices at issue were the product of a carefully coordinated scheme by Chubb's management. In particular, they rely on the policy illustrations that Chubb's agents allegedly were taught to use when selling interest-sensitive policies. Plaintiffs allege that the vanishing premium marketing illustrations, while not necessarily identical, uniformly failed to contain the disclosures necessary to make them not misleading. Thus, they argue that the question of whether misleading representations were made to any members of the class is a common question that can fairly and effectively be resolved on a class-wide basis. I disagree.

Class certification may not be appropriate when a putative class action is based on non-uniform written representations. Darms v. McCulloch Oil Corp., 720 F.2d 490, 493 (8th Cir. 1983); Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880, 882 (5th Cir. 1973). Similarly, most courts hold that certification is not appropriate when the plaintiffs' claims are based on oral representations, which, by their nature, tend to be

16

particularized.  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 (11th Cir. 1997); Peoples v. American Fidelity Life Ins. Co., No. 3:97CV101/MD, 1998 WL 6539, at *10 (N.D. Fla. Jan. 6, 1998); Glick v. E.F. Hutton & Co., 106 F.R.D. 446, 449-50 (E.D. Pa. 1985).  Only when the variations in the representations are immaterial and, thus, the representations are essentially uniform, do courts generally consider certifying such classes. See In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig., 140 F.R.D. 425, 430 (D. Ariz. 1992) (holding oral representations no bar to certification where bond salespersons testified to a common sales approach); In re Baldwin-United Corp. Litig., 122 F.R.D. 424, 427 (S.D.N.Y. 1986) (holding minor variations in written securities prospectuses no bar to certification).

The evidence plaintiffs offer to support their claims of a centrally conceived scheme to mislead is hotly disputed and less than compelling.  Nevertheless, even if plaintiffs were able to prove at trial that Chubb trained its agents to use the policy illustrations in a misleading manner, it still would not eliminate the need for a "mini-trial" on each class member's claim to determine the nature of the representations that were made in

17

that case.[5]

Plaintiffs concede that the policy illustrations at issue were not uniform.  Instead, each illustration was created by any one of five different computer systems and was individually tailored to the financial status of the individual policyholder.  Further, the policy illustration was not a stand-alone document, but rather was only one piece of the entire mix of information made available to each prospective policyholder.  Each agent made individualized oral representations to the policyholder based on the illustration, other written materials, and the potential policyholder's financial situation and goals.  Moreover, Chubb sold its policies through a large network of mostly independent contractors.  Although some of these agents received training from Chubb, the record contains no evidence suggesting that they were required to use standardized sales scripts.  In the absence

---

[5]  The contentions of the class representatives in this case illustrate how fact-intensive and individualized this process would be.  Both Rothwell and Buddemeyer stated in deposition testimony that they either did not see a sales illustration or only vaguely recall having done so.  Each further testified that he relied on the oral representations made to him by Chubb's agent.  The agent, on the other hand, stated by affidavit that he showed sales illustrations to both plaintiffs, answered many questions that were based on the illustrations, and made all disclosures necessary to render the illustrations not misleading.

of such evidence, plaintiffs cannot satisfy their burden of showing that this issue presents a common question that predominates in importance over individual issues. Compare Peoples, 1998 WL 6539, at *7 (refusing to certify where plaintiffs' recollections of oral representations varied materially from alleged model sales presentation) and Stephenson v. Bell Atlantic Corp., No. Civ. A. 96-1217(JBS), 1997 WL 769374, at *14 (D.N.J. Dec. 11, 1997) (refusing to certify in absence of verbatim oral sales presentation scripts) with In re American Continental, 140 F.R.D. at 430 (certifying where salespersons testified to having merely repeated misrepresentations made by employer).

Litigating plaintiffs' claims as a class action also is problematic because several of their fraud-based claims (i.e., fraud, fraudulent inducement, and negligent misrepresentation) add a further layer of individual questions that predominate over any common issues. Resolution of these claims requires proof both that Chubb's agents made misrepresentations and that the individual class members reasonably relied on those representations in purchasing their insurance policies. See Andrews v. American Tel. & Tel. Co., 95 F.3d 1014, 1025 (11th Cir. 1996); Castano v. American Tobacco Co., 84 F.3d 734, 745 (5th Cir.

19

1996); <u>Martin v. Dahlberg, Inc.</u>, 156 F.R.D. 207, 213 (N.D. Cal. 1994).

Some courts have held that class certification is appropriate notwithstanding individual questions of reliance. <u>See e.g.</u>, <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 786 (3d Cir.), <u>cert.</u>

denied, 474 U.S. 946 (1985); In re Prudential Ins. Co. of Am.
Sales Practices Litig., 962 F. Supp. 450, 516 (D.N.J. 1997);
Holton v. L.F. Rothschild, Unterberf, Towbin, 118 F.R.D. 280, 283
(D. Mass. 1987).  I agree, however, with the majority view that
certification generally is inappropriate when individual reliance
is an issue.  See, e.g., Andrews, 95 F.3d at 1025; Castano, 84
F.3d at 745; Simon, 482 F.2d at 882; In re One Bancorp Sec.
Litig., 136 F.R.D. 526, 533 (D. Me. 1991).  As the Supreme Court
stated in Basic Inc. v. Levinson, "[r]equiring proof of indivi-
dualized reliance from each member of the proposed plaintiff
class effectively would . . . prevent[] . . . proceeding with
the class action, since individual questions then would . . .
overwhelm[] the common ones."  485 U.S. 224, 242, 250 (1988)
(upholding district court's certification of securities fraud
class where reliance could be presumed based on "fraud-on-the-
market" theory); see Rules Advisory Comm. Note to Amended Rule
23, 39 F.R.D. at 103 ("[A]lthough having some common core, a
fraud case may be unsuited for treatment as a class action if
there was material variation in the representations made or in
the kinds or degrees of reliance by the persons to whom they were
addressed.").  Accordingly, I decline to certify the vanishing

21

premium subclass because individual issues predominate over any common questions.

(2) Churning Subclass

Plaintiffs argue that common issues will predominate as to the churning subclass because trial will focus on establishing that Chubb had a practice of encouraging agents to churn policies without regard to whether replacement was beneficial to the particular policyholder. A quick look at this subclass's causes of action, however, reveals that, here too, questions particular to each plaintiff in this subclass predominate over any common issues.

Plaintiffs claim that Chubb and its agents owed them a fiduciary duty. By encouraging plaintiffs to replace their pre-existing policies when it was not beneficial to their interests, plaintiffs charge that Chubb breached this fiduciary duty. In order to succeed with this claim, each plaintiff would need to prove: (1) the existence of a fiduciary relationship; and (2) that policy replacement was not beneficial to his or her interests. See Kaser v. Swann, 141 F.R.D. 337, 341 (M.D. Fla. 1991); Moscarelli v. Stamm, 288 F. Supp. 453, 462 (S.D.N.Y. 1968). Both showings, however, necessitate individualized

22

inquiries that render certification inappropriate.

Determining whether Chubb owed a fiduciary duty to each plaintiff would require a fact-intensive inquiry into the nature of the relationship between policyholder and agent. See e.g., Kaser, 141 F.R.D. at 341 ("To show the existence of a fiduciary relationship the members of the class would have to prove that an exchange of trust and confidence occurred between each plaintiff and [the defendant]. This would require testimony from each [plaintiff] and, as such makes this case unsuited for class certification."); Moscarelli v. Stamm, 288 F. Supp. at 462. Moreover, even if a given plaintiff could establish that Chubb owed him or her a fiduciary duty, that plaintiff would also have to prove that replacing the pre-existing policy was not bene-ficial to his or her interests. Cf. Romano v. Merrill Lynch, Pierce, Fenner & Smith, 834 F.2d 523, 530 (5th Cir. 1987) (affirming district court's refusal to certify securities churning class because, inter alia, "adjudication would require . . . an examination of the individual investment objectives of the client"), cert. denied, 487 U.S. 1205 (1988). This showing necessarily would involve a fact-intensive actuarial comparison of each individual plaintiff's pre-existing policy with the terms

23

of the Chubb policy and likely would require proprietary information from each plaintiff's previous insurer.[6] Cf. Daniel R. Fishchel & Robert S. Stillman, The Law and Economics of Vanishing Premium Life Insurance, 22 Del. J. Corp. L. 1, 22, 30-31 (1997).

Plaintiffs also claim that Chubb had a duty to act with reasonable care in its dealings with the policyholders. Chubb and its agents violated this duty, plaintiffs contend, by intentionally misrepresenting important facts concerning the replacement transaction and failing to disclose that: plaintiffs would incur surrender charges in canceling their old policies; Chubb stood to earn administrative fees at their expense; the agent stood to earn substantial commissions at their expense; and the accumulated value of their pre-existing policies was probably not sufficient to cover the expense of the new policies.

---

[6] As an indication of how fact-intensive and individualized such a process would be, Chubb has submitted evidence that it had to depose the Landaus' former insurer just to establish the actual terms of their former policies. In addition, the chief actuary for the Landaus' former insurer testified that determining whether the their decision to purchase a policy from Chubb was economically beneficial would be, as a practical matter, difficult. Further, he testified that completing the calculations necessary to make this determination would require proprietary information.

Plaintiffs claim that in misrepresenting aspects of the

transaction and failing to disclose relevant facts, Chubb was negligent, fraudulently induced them to purchase new policies, and violated New Hampshire's Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A:2.

Certification of these claims is inappropriate for the same reason that certification of the vanishing premium subclass is inappropriate -- because proof of the claims would require inquiries into each individual transaction to determine whether the individual agents made the necessary disclosures. <u>See</u> <u>Jackson</u>, 130 F.3d at 1006; <u>Peoples</u>, 1998 WL 6539, at *10. Again, this showing would break down into a series of individualized mini-trials on issues that would substantially predominate over any issues common to the class. <u>See</u> <u>Moscarelli</u>, 288 F. Supp. at 462; <u>see</u> <u>also</u> <u>Willoughby v. John Hancock Mut. Life Ins. Co.</u>, No. 96/00307, slip op. at 7 (N.Y. Sup. Ct. Feb. 3, 1997) (denying certification to "churning" class because deciding case would require inquiry into each individual transaction). Because questions particular to each class member would likely predominate over issues common to this subclass, certification of the churning subclass is inappropriate. <u>See</u> <u>Andrews</u>, 95 F.3d at 1025; <u>Romano</u>, 834 F.2d at 530.

26

(3)  Summary

The claims at issue in this case present a difficult challenge.  It may well be true, as plaintiffs contend, that many of the individual plaintiffs lack sufficient incentives or resources to pursue their claims in separate actions if class certification is denied.  I am convinced, however, that I could not make significant progress in resolving this dispute on a class-wide basis because the core questions on which plaintiffs' claims depend can only be resolved through individual trials.  Under these circumstances, it would stretch the limitations of Rule 23 beyond recognition to grant plaintiffs the relief they request.[7]

---

[7]  Although I have based my ruling on the predominance of individual factual issues, certification also would be problematic because of the potential for variations in the law governing plaintiffs' claims.  See e.g., Castano, 84 F.3d at 741 ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.").  New Hampshire's Choice of Law rules dictate, at least with respect to plaintiffs' contract claims, that the law of the policy-holder's domicile will govern questions concerning the validity and construction of the insurance contract.  Glowski v. Allstate Ins. Co., 134 N.H. 196, 198 (1991) ("[T]he state which is the 'principal location of the insured risk' bears the most significant relation to the contract in the absence of an express choice of law by the parties.") (quoting Ellis v. Royal Ins. Co., 129 N.H. 326, 331 (1987)).  As the Tenth Circuit recently noted, a split exists among the states as to whether promotional materials used in the sale of insurance policies can bind the insurer.

28

## III.

For the reasons stated herein, I deny plaintiffs' motion for class certification (document no. 48).

SO ORDERED.

_____
Paul Barbadoro
Chief Judge


March 31, 1998

cc:  Paul Maggiotto, Esq.
     Peter Lagorio, Esq.
     Mark Weaver, Esq.
     Jeffrey Barist, Esq.
     Charles J. Piven, Esq.
     Richard S. Schiffrin, Esq.

---

Brown v. Royal Maccabees Life Ins. Co., No. 96-8119, 1998 WL 88168, at *3 (10th Cir. Mar. 3, 1998).  Other potential differences in state law also could affect the disposition of other claims.  See, e.g., Castano, 84 F.3d at 734 n.15 (noting variations in state law of fraud and duty to disclose); In re American Med. Sys., 75 F.3d at 1085 (noting variations in state law of negligence) (citing In re Rhone-Poulenc Rorer Inc., 51 F.3d 1293, 1300 (7th Cir. 1995)); In re Northern Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 850 (9th Cir. 1982) (noting variations in state law punitive damages standards).  Accordingly, plaintiffs' class certification motion also is deficient because they have failed to demonstrate that these variances in state law will not prove to be an insurmountable impediment to class certification.  See, e.g., Castano, 84 F.3d at 741; Walsh v. Ford Motor Co., 807 F.2d 1000, 1016-17 (D.C. Cir. 1986).

29

Michael D. Craig, Esq.